IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:20-cv-00497-FDW
(CRIMINAL CASE NO. 3:11-cr-00371-FDW-DCK-1)

| | |
|---|---|
| JOHN STACKS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion to Vacate Sentence under 28 U.S.C. § 2255 [CV Doc. 1],[1] and the Government's Motion to Dismiss Petitioner's Motion to Vacate [CV Doc. 5].

**I.     BACKGROUND**

In the early morning hours of March 18, 2011, Charlotte Mecklenburg police officers were conducting surveillance on Westpark Drive. At the time, the area was known as a "hot spot for breaking and entering motor vehicle cases." United States v. Stacks, 571 Fed. App'x 163, 165 (4th Cir. 2014). Officers noted a brown Cadillac being driven by a man later identified as Petitioner John Stacks. Id. Petitioner drove in and out of hotel parking lots, driving up and down the rows of parked cars, but did not park, stop to pick anyone up, or drop anyone off. [CR Doc. 14: Suppression Hearing Tr.]. The officers eventually effected a traffic stop of the Cadillac. [CR Doc. 45 at ¶ 5: Presentencing Investigation Report (PSR)]. Petitioner gave his driver's license to

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:20-cv-00497-FDW, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:11-cr-00371-FDW-DCK-1.

the officers, who noticed a camouflage jacket spread across the back seat of Petitioner's car, as if to conceal something. [Id.]. When the officers asked Petitioner to exit his car, he refused and sped away. [Id.]. The officers pursued Petitioner but were unsuccessful in apprehending him. [Id.].

Later than morning, Diabete Pratt, a guest at one of the area hotels, went for a walk and saw a gun "sitting on the ground." [CR Doc. 55 at 56: Trial Tr.]. The firearm "was laying underneath some bushes by a tree." [Id.]. Pratt picked up the gun and gave it to a police officer who was nearby. [Id.]. Pratt found the gun about 100 yards from where officers had stopped Petitioner's vehicle. [CR Doc. 45 at ¶ 5].

Officers arrested Petitioner three days later on related state charges. [Id. at ¶ 6]. While he was detained at Mecklenburg County Jail, Petitioner made several phone calls during which he discussed the traffic stop and his encounter with law enforcement. [CR Doc. 56 at 36: Trial Tr.]. In one of his first calls, Petitioner told an unidentified female, "man you know they found the burner, right?" [Govt. Trial Ex. 8a]. Later, Petitioner told her, "I skated on they ass, I had to throw my iron." [Govt. Tr. Ex. 9a]. When discussing the traffic stop and the officers' request to search his car, Petitioner explained, "I couldn't let 'em do that (inaudible) that iron in there like that." [Id.].

In a subsequent call, the unidentified female asked, "Oh so you had a gun in the car." [Govt. Tr. Ex. 10a]. Petitioner responded, "Yeah (inaudible) … had to do it … I had to run." [Id.]. The female asked, "Either way it's gonna be trouble right?" [Id.]. Petitioner answered, "I mean not, I mean, nah … with them finding that gun, that's trouble but …." [Id.]. Later Petitioner stated, "[T]hey didn't see when I threw it, they ain't seen me when I threw it. I don't know what made 'em search that shit." [Govt. Tr. Ex. 11a]. In one of the final calls, Petitioner offered, "They done got my iron … they don't got my iron." [Govt. Tr. Ex. 12a].

On November 15, 2011, Petitioner was charged in a Bill of Indictment with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). [CR Doc. 1: Bill of Indictment]. Counsel was appointed for Petitioner. Following the denial of Petitioner's motion to suppress, Petitioner proceeded to trial. [See Docs. 10, 23]. Petitioner's trial began on June 5, 2012. At trial, the parties stipulated that Petitioner "had previously been convicted of a crime punishable by imprisonment for more than one year." [CR Doc. 55 at 27]. The Government presented testimony of nine witnesses, as well as recordings of the incriminating phone calls Petitioner made from jail. Stacks, 571 Fed. App'x at 168. Pratt testified to the circumstances of finding the gun outside a hotel. [CR Doc. 55 at 56]. Pratt also testified that he returned about a week later to show police where he had found the gun. [Id. at 57]. Charlotte Mecklenburg Police Officer Jeremiah Logsdon testified that on the morning of March 18, 2011, he was parked on Westpark Drive when Pratt approached him and told him that he, Pratt, had found a gun that he wanted to turn over. [Id. at 59-60]. Pratt then gave Logsdon a chrome Cobra 380 pistol and pointed to some bushes and a tree near the entrance to the hotel, indicating that was where he had found the gun. [Id. at 60, 62-63]. After hearing all the evidence, the jury found Petitioner guilty of the felon-in-possession charge. [CR Doc. 39: Jury Verdict].

Before sentencing, a probation officer prepared a PSR. [CR Doc. 43: PSR]. The probation officer recommended a base offense level of 20 because Petitioner had committed the instant offense after sustaining one conviction for a crime of violence, that is, robbery with a dangerous weapon. [Id. at ¶ 12 (citing U.S.S.G. §2K2.1)]. The probation officer recommended application of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), enhancement because Petitioner had at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions. The probation officer found a total offense level (TOL) of 33

under the ACCA. [Id. at ¶ 18 (citing U.S.S.G. §4B1.4)]. With a TOL of 33 and criminal history category of IV, the recommended guideline range was 188 to 235 months' imprisonment. [Id. at ¶ 49]. Under § 924(e)(1), the statutory mandatory minimum sentence was 15 years, and the statutory maximum was life. [Id. at ¶ 48].

Petitioner was sentenced on January 15, 2013. The Court accepted the PSR as written and recognized the sentencing range of 188 to 235 months. [CR Doc. 57 at 3: Sentencing Tr.]. Petitioner's counsel argued for a sentence of 188 months, at the low end of the guidelines range, based on the 18 U.S.C. § 3553(a) sentencing factors. [Id. at 4]. The Government argued for a sentence at the middle to high end of the guidelines range based on these factors. [Id. at 7-11]. The Court sentenced Petitioner to a term of imprisonment of 212 months. [Id. at 17-18]. Judgment on Petitioner's conviction was entered on January 23, 2013. [CR Doc. 49: Judgment]. Petitioner timely appealed his conviction and sentence. [CR Doc. 51: Notice of Appeal]. On May 8, 2014, the Fourth Circuit affirmed this Court's Judgment, rejecting Petitioner's challenge to the denial of his motion to suppress. Stacks, 571 Fed. App'x at 165. Petitioner did not petition for certiorari.

Six years later, on September 2, 2020, Petitioner filed the instant Section 2255 Motion to Vacate, Set Aside or Correct Sentence. [CV Doc. 1]. Petitioner argues that he is actually innocent of being a felon-in-possession of a firearm based on newly discovered evidence and Rehaif v. United States, 139 S. Ct. 2191 (2019);[2] and that he received ineffective assistance of counsel with respect to the cross-examination of a witness, because his attorney did not challenge his sentence, and because his attorney did not argue that the grand jury and the petit jury should have found that Petitioner knew he "belonged to the relevant category of persons barred from possessing a

---

[2] In Rehaif, the Supreme Court "conclude[d] that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Rehaif, 139 S. Ct. at 2200.

4

firearm." [CV Doc. 1 at 4]. Petitioner claims that his motion is timely based on newly discovered evidence, the Supreme Court's decision in Rehaif, and ineffective assistance of appellate counsel. Petitioner also claims that he contracted Covid-19 and "has been very sick the past 6 months & the system has been down." [Id. at 11]. Petitioner attaches to his motion an "affidavit" of Diabate Pratt, the man who found the firearm under the bushes 100 yards from where Petitioner had been stopped. [CV Doc. 1 at 13-14]. The statement is notarized but is not sworn or signed under penalty of perjury. It provides:

> I saw someone walking fast from the area I found the gun they looked like they droped something that's what made me look in that area when I walked by the bushess. So I picked up the gun and turned it in to the cop I saw parked across the street.

[Id. at 14 (errors uncorrected)].

The Government moved to dismiss Petitioner's motion as time barred and, alternatively, responded on the merits. [CV Doc. 5].

This matter is now ripe for adjudication.

## II. ANALYSIS

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (the "AEDPA"). Among other things, the AEDPA amended 28 U.S.C. § 2255 by imposing a one-year statute of limitations period for the filing of a motion to vacate. Such amendment provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by

> the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, Petitioner's conviction became final for purposes of Section 2255(f) on August 6, 2014, when the 90-day period for filing a petition for writ of certiorari expired. See Clay v. United States, 537 U.S. 522, 532 (2003) (holding the limitations period begins to run when the time for seeking review expires). Moreover, Rehaif was decided on June 21, 2019, and assuming *arguendo* that Rehaif affords Petitioner relief, Petitioner did not file his Section 2255 motion until September 2, 2020. [CV Doc. 1 at 12]. It is, therefore, untimely.

To be sure, the so-called affidavit by Pratt was not newly discovered evidence for purposes of § 2255(f)(4). Petitioner claims that the affidavit was "not available until this year." [CV Doc. 1 at 11]. This conclusory assertion, however, is insufficient. Johnson v. United States, 259 F.Supp.3d 356, 359 (D. Md. 2017) (holding relevant issue is whether petitioner "had the capability to make such a discovery through the exercise of due diligence"). Pratt testified in the trial in this matter, eight years ago, and Petitioner was indisputably aware of his existence. See United States v. Segers, 271 F.3d 181, 186 n.5 (4th Cir. 2001) (rejecting timeliness claim based on "new evidence," including affidavits, where petitioner should have known "by due diligence" of the existence of a witness present at the crime scene). This claim is untimely. See Mayle v. Felix, 545 U.S. 644 (2005) (recognizing timeliness of § 2255 claims is considered on a claim-by-claim basis).

Additionally, Petitioner has not stated adequate grounds for the application of equitable tolling. To be entitled to equitable tolling, "an otherwise time-barred petitioner must present '(1)

6

extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.'" United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003), cert. denied, 541 U.S. 905, 124 S. Ct. 1605 (2004)). A petitioner must show he has been "pursuing his rights diligently." Holland v. Florida, 560 U.S. 631, 649 (2010). Further, equitable tolling is limited to "rare instances – where due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Whiteside v. United States, 775 F.3d 180, 184 (4th Cir. 2014) (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003)).

Petitioner contends that he was "unable to review & do the proper paper work as needed" because he "caught Covid 19" and "has been very sick the past 6 months," and he "put[ ] faith in [his] appeal attorney." [CV Doc. 1 at 11]. Petitioner also claims that "the system has been down." [Id.]. These claims are insufficient to implicate equitable tolling. Petitioner cannot fault his appellate attorney for any failure to timely file a motion to vacate over the past six years. Moreover, Petitioner does not contend or support that his appellate attorney agreed to file a motion to vacate on his behalf. Petitioner's claim that "the system has been down" is too vague and conclusory to warrant a finding of extraordinary circumstances or that Petitioner was prevented from filing on time. As to Petitioner's claim of recent illness, Petitioner fails to explain why he was unable to bring his claims over the preceding nearly six years. Finally, as to Petitioner's Rehaif-based claim, Petitioner does not explain how he diligently pursued his rights prior to his illness, or how his illness affected his ability to bring the present motion.[3] Under these

---

[3] Moreover, the Government filed medical records in Petitioner's criminal proceedings in response to Petitioner's motion for compassionate release [See CR Doc. 72]. These records show Petitioner suffered some nocturnal shortness of breath in the weeks following his June 1, 2020 Covid-19 diagnosis, but do not remotely support Petitioner's claim that he was "very sick" from Covid-19 for "the past 6 months." [See

7

circumstances, his claim of illness does not establish an extraordinary circumstance warranting equitable tolling. See United States, 22 Fed. App'x 226, 227 (4th Cir. 2001) (holding "untimely and conclusory allegations of illness are insufficient to equitably toll the statute of limitations"); Yarborough v. Burger King Corp, 406 F. Supp.2d 605, 608 (M.D.N.C. 2005) ("Illness is rarely valid grounds for the application of equitable tolling."). Nor does it appear that a gross injustice would result from enforcing the limitations period against Petitioner. See Whiteside, 775 F.3d at 184.

As such, Petitioner's claim is untimely under § 2255(f) and equitable tolling does not apply. The Court will, therefore, dismiss Petitioner's motion to vacate.[4]

### III.  CONCLUSION

Having concluded that Petitioner's motion to vacate is untimely under § 2255(f)(1), the Court will grant the Government's motion to dismiss.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED** and the Government's Motion to Dismiss [Doc. 5] is **GRANTED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable

---

id. at 12-52]. Petitioner's medical record specifically reflects that, as of September 11, 2020, Petitioner "denie[d] all COVID symptoms." [Id. at 17].

[4] The Court notes that even if Petitioner's motion were timely it would be dismissed on the merits, in any event.

jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: May 12, 2021

_____
Frank D. Whitney
United States District Judge